UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| GLENN DUCKWORTH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 09-CV-279-B-W |
| ) | |
| MID-STATE MACHINE PRODUCTS, ) | |
| ) | |
| Defendant ) | |

## RECOMMENDED DECISION ON
## MOTION FOR PARTIAL SUMMARY JUDGMENT

This case presents claims of age discrimination in employment brought in two counts. Each count seeks relief under the Age Discrimination in Employment Act and the Maine Human Rights Act, respectively, on the basis of a hiring decision made in each of the four years from 2005 to 2008. (Compl. ¶¶ 35, 40-43, Doc. No. 1.) Defendant Mid-State Machine Products has filed a motion for partial summary judgment against claims premised on discrete employment decisions made by Mid-State in each of the three years from 2005 to 2007—one employment decision in each year. (Def.'s Am. Mot. for Partial Summ. J., Doc. No. 23.) The motion does not target claims premised on a separate hiring decision made in 2008. According to Mid-State, claims associated with hiring decisions made in 2005 through 2007 are not actionable because they were not administratively exhausted and/or are barred by the applicable statutes of limitation.[1] The Court referred the motion pursuant to 28 U.S.C. § 636. Based on my review of the material facts and the parties' legal memoranda, I recommend that the Court grant the motion.

---

[1] Mid-State also argues that summary judgment is warranted because Plaintiff Glenn Duckworth did not qualify as an applicant to the relevant positions filled in 2005 through 2007. In a prior order, I stayed proceedings

## FACTS

The following facts are drawn from the parties' competing statements of material facts, filed in accordance with Local Rule 56, and from the record cited in support of those statements. See Doe v. Solvay Pharms., Inc., 350 F. Supp. 2d 257, 259-60 (D. Me. 2004) (outlining the mandatory procedure for establishing factual predicates needed to support or overcome a summary judgment motion); Toomey v. Unum Life Ins. Co., 324 F. Supp. 2d 220, 221 n.1 (D. Me. 2004) (explaining "the spirit and purpose" of Local Rule 56).

Plaintiff Glenn Duckworth obtained employment from Defendant Mid-State Machine Products in 1995 and worked in the position of Gage[2] Control Technician for approximately seven years, until October 2002. (Def.'s Am. Statement ¶ 2, Doc. No. 24.) According to Duckworth, he made inquiries in May, June, and July of 2005. (Pl.'s Additional Statement ¶ 2, Doc. No. 31.) Leo Bourgoin, a Mid-State employee with some hiring authority at the time, stated to Mr. Duckworth in 2005 words to the effect "that there was nothing available in his department at that time." (Id. ¶ 7.)

In October 2008, as a result of administrative proceedings arising from an April 2008 hiring decision, Mr. Duckworth discovered that Mid-State had filled a gage control position in July 2005 around the time he had spoken with Mr. Bourgoin. (Id. ¶ 8.) He also discovered that Mid-State filled gage control positions in August 2006 and in March 2007. (Id.) Mr. Duckworth complains that Mid-State failed to notify him that it had gage control positions to fill. (Id. ¶¶ 9-

---

on that factual question based on the presentation Mr. Duckworth made in an opposing motion under Rule 56(f) of the Federal Rules of Civil Procedure. (Order on Rule 56(f) Motion, Doc. No. 28.)

[2]   I have adopted Mid-State's spelling of its position rather than Mr. Duckworth's use of the term "gauge."

11.) He does not state that he ever formally applied for a position with Mid-State in 2005 through 2007 or that he even inquired about available positions in 2006 or 2007.

Mr. Duckworth first filed an administrative charge of age discrimination related to the 2005-2007 positions on March 26, 2009. (Def.'s Am. Statement ¶ 4.) He avers that he had no knowledge about Mid-State filling gage control positions in 2005, 2006, and 2007 until he received discovery during the administrative process conducted by the Maine Human Rights Commission. (Pl.'s Additional Statement ¶14.)

## DISCUSSION

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material if its resolution would "affect the outcome of the suit under the governing law," and the dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). When reviewing the record for a genuine issue of material fact, the Court must view the summary judgment facts in the light most favorable to the nonmoving party and credit all favorable inferences that might reasonably be drawn from the facts without resort to speculation. P. R. Elec. Power Auth. v. Action Refund, 515 F.3d 57, 62 (1st Cir. 2008). If such facts and inferences could support a favorable verdict for the nonmoving party, then there is a trial-worthy controversy and summary judgment must be denied. Azimi v. Jordan's Meats, Inc., 456 F.3d 228, 241 (1st Cir. 2006).

Mid-State Machine Products seeks partial summary judgment against counts one and two of the complaint to the extent they seek to impose liability on the basis of discrete employment

3

decisions Mid-State made in 2005, 2006, and 2007 with respect to the filling of gage control positions. Mid-State's motion does not challenge either count to the extent it is premised on a hiring decision made in 2008, for which Mid-State interviewed Mr. Duckworth but hired another applicant.

The Age Discrimination in Employment Act (ADEA) requires that a civil action be preceded by a charge filed with the EEOC. 29 U.S.C. § 626(d)(1). Because Maine law also prohibits age discrimination and gives the Maine Human Rights Commission authority to grant or seek relief for such practices, a party has 300 days from the alleged unlawful practice in which to press his administrative charge. Id. §§ 626(d)(1), 633(b); Mercado-Garcia v. Ponce Fed. Bank, 979 F.2d 890, 895 (1st Cir. 1992). "No civil action may be commenced" if such a charge is not timely pursued. Id. § 626(d)(1). The purpose of requiring an administrative charge is "to provide the employer with prompt notice of the claim and to create an opportunity for early conciliation." Lattimore v. Polaroid Corp., 99 F.3d 456, 464 (1st Cir. 1996). Because the ADEA's 300-day limitation on commencement of administrative proceedings functions like a statute of limitation,[3] it is subject to equitable modification under certain circumstances. Kale v. Combined Ins. Co., 861 F.2d 746, 751-52 (1st Cir. 1988).

Under the Maine Human Rights Act (MHRA), the applicable limitation on filing an administrative charge was six months.[4] 5 M.R.S. § 4611 (2002). Failure to comply does not

---

[3] The ADEA does not impose a statute of limitation on private sector claims apart from the limitation that arises by operation of its administrative-filing requirements. Rossiter v. Potter, 357 F.3d 26, 29 (1st Cir. 2004) (imposing a two-year period of limitation on public sector claims brought by federal employees, but distinguishing the statutory scheme applicable to federal employees from the one applicable to private sector employees).

[4] The Maine Legislature has recently increased the time period to 300 days. P.L. 2009, ch. 235, § 1; L.D. 1108 (124th Legis. June 2, 2009). This amendment came into effect well after the expiration of the administrative filing deadline that would have applied to claims arising from employment activity in 2005 through 2008. Consequently, the amendment "does not affect any punishment, penalty or forfeiture incurred before the . . . amendment [took] effect." 1 M.R.S. § 302.

preclude litigation, but it does preclude any award of attorney's fees, civil penal damages, or compensatory and punitive damages listed in § 4613 of the MHRA. Id. § 4622. See also 5 M.R.S. § 4613(2)(B)(2) & (2)(B)(8) (listing the availability of a back pay award separate from the availability of compensatory damages). Unlike the ADEA, however, the MHRA also imposed a two-year statute of limitation on the commencement of a civil action over and above the administrative filing limitation. Id. § 4613(2)(C).[5]

Mr. Duckworth's argument is that neither the administrative-filing periods of the ADEA and the MHRA nor the MHRA statute of limitation commenced running for his claims related to 2005, 2006, and 2007, until after he learned, in 2008, that younger men had filled open positions in each year. (Pl.'s Opposition at 4-6, Doc. No. 30.) Alternatively, if the periods did commence running on the date of the hiring decisions in question, Mr. Duckworth argues that the Court should toll the running of the clock under the circumstances. I am not persuaded by either theory.

Under both federal law and Maine law, the limitation period on a claim of employment discrimination begins to run when the employee or prospective employee "receives unambiguous and authoritative notice of the discriminatory act (which is another way of saying that the period begins to run when the employee learns of the adverse employment action)." Morris v. Gov't

---

[5] This provision has also been amended by the bill referenced in the preceding footnote. P.L. 2009, ch. 235, § 3. The amendment potentially extends the statute of limitation for the commencement of civil actions in some circumstances where the Maine Human Rights Commission has maintained administrative proceedings long enough to run up against the two-year limitation period. Mr. Duckworth has not raised the amendment in support of his summary judgment opposition. In any event, the amendment would not apply in this case because the Commission lacked jurisdiction over the administrative charges in question. For reasons set forth in this Recommended Decision, the alleged, discriminatory failures to hire in 2005 through 2007 were time barred by a considerable margin as of the date Mr. Duckworth pursued administrative remedies with the Commission.

Dev. Bank, 27 F.3d 746, 749 (1st Cir. 1994); LePage v. Bath Iron Works Corp., 2006 ME 130, ¶ 15, 909 A.2d 629, 635 (quoting Morris).[6]

Mr. Duckworth expressed his interest in employment in 2005 and nothing was offered to him on the stated ground that nothing was available at that time. As for 2006 and 2007, Mr. Duckworth fails to present any facts suggesting he even pursued a position in those years.[7] Nevertheless, Mr. Duckworth maintains that he should be regarded as an active applicant throughout this entire period because he put Mid-State on notice, in 2005, that he was interested in returning to work for them.

"It is by now well established that, in employment discrimination actions, limitations periods normally start to run when the employer's decision is made and communicated to the affected employee." Morris v. Gov't Dev. Bank, 27 F.3d 746, 750 (1st Cir. 1994) (explaining that claims do not exist in "a state of suspended animation" until the claimant becomes aware of the existence of discriminatory animus). As for equitable tolling, "[i]f the court finds that the plaintiff knew, actually or constructively, of his ADEA rights, ordinarily there could be no equitable tolling based on excusable ignorance." Kale, 861 F.2d at 753.

Mr. Duckworth fails to offer any testimony to the effect that he was ignorant of the fact that federal and state law prohibit age discrimination in relation to hiring decisions. Rather, his point is that he did not have sufficient information from which to draw an inference that he was

---

[6] The Morris rule on equitable tolling has been described as "slippery" because it states that a court should consider what the plaintiff knew about any facts and circumstances suggesting the existence of discriminatory animus, while also stating that not all of the facts and circumstances need be known. Commonwealth v. Bull HN Info. Sys., 143 F. Supp. 2d 134, 153-54 (D. Mass. 2001).

[7] Mr. Duckworth suggests that the failure to notify him of an empty gage control position in either 2006 or 2007 constitutes "adverse employment decisions that he had no way of knowing had occurred." (Pl.'s Opposition at 9.) I reject this characterization in the absence of any evidentiary presentation to the effect that he pursued a position with Mid-State in 2006 or 2007. It is within his ability to supply an affidavit indicating that he continued to pursue employment with Mid-State in 2006 and 2007.

being passed over for employment based on his age.  (Affidavit of Glenn Duckworth ¶ 6, Doc. No. 31-4.)  In Mr. Duckworth's view, Mid-State mislead him concerning the possible existence of discriminatory animus because Mr. Bourgoin told him in 2005 that nothing was available and because nobody at Mid-State ever told him, subsequently, that he would not be considered for an empty position that he was qualified to fill.  (Pl.'s Opposition at 8-9.)  In effect, Mr. Duckworth argues that either his claims did not accrue until he learned of activity related to the filling of gage control positions  (id. at 4) or, if they accrued despite his ignorance of Mid-State's employment activity, the limitation period should be tolled for this entire period because Mid-State never notified him of what was transpiring (id. at 8-9).

     Mr. Duckworth's position highlights the efficacy of an accrual rule that turns on the date when a plaintiff knows, or has reason to know, that he has suffered an injury, whether or not he understands the motivation behind it.  In any event, assuming for the sake of argument that Mr. Duckworth's presentation is sufficient to establish ignorance of his rights, then he might gain some leeway in relation to the accrual date, or more appropriately in relation to equitable tolling, if his ignorance is attributable to misleading conduct by the defendant, but the leeway he requests is simply too great to be condoned on the circumstances of this case.

     Even if a plaintiff can demonstrate excusable ignorance of his rights based on misleading conduct by the employer, a court must still "assess any countervailing equities against the plaintiff," such as failure to "diligently pursue his claim."  Id.  In particular, a court should not permit filing deadlines to be modified in a fashion that would entirely negate "the basic purposes behind the limited filing period—namely providing the government an opportunity to conciliate . . . and giving early notice to the employer of possible litigation."  Id.  The duration of the tolling period requested by the plaintiff necessarily bears upon this determination.

My research has failed to uncover a case closely analogous to this one, where the plaintiff makes employment inquiries without success and discovers years later that the employer filled a position he had sought at the time and filled other positions in the intervening years without personally notifying him as to their availability. The dearth of cases makes sense, however, because "thanks but no thanks" is a discrete hiring decision and the equities of such a scenario do not justify the tolling of time periods associated with administrative remedies or statutes of repose when it comes to a non-diligent applicant who discovers, years later, either (1) that maybe an employer should have told him about a position that was vacant when he first inquired about employment opportunities or (2) that an employer could have told him about subsequent opportunities, if it had wished to actively solicit individuals who had previously inquired about employment opportunities.[8]

In this case, rewinding the clock (whether by deferring the accrual date or by equitable tolling) for the three-year period in which Mr. Duckworth remained interested in working as a Gage Control Technician would amount to the kind of suspended animation approach rejected by the First Circuit in Morris. 27 F.3d at 749-50. Assuming Mr. Duckworth really had his iron in the fire throughout this time period, the obligation gradually shifted to Mr. Duckworth, as time passed, to utilize the administrative process to investigate whether he was being shut out on

---

[8] A person who *diligently* seeks employment from a particular employer and is denied an opportunity to apply can draw one of two inferences. Either no position is available or else the employer has no interest in hiring him, specifically. Although the applicant will not necessarily know which situation exists, the applicant understands that employment is being denied. Moreover, the more diligently the applicant pursues employment, including by formal means as compared with informal inquiries, the more likely it is that he will come to understand or infer the cause of his failure to obtain employment. This case is profoundly less supportive of equitable tolling, of course, because of the absence of diligence on the part of Mr. Duckworth. If the facts of this case justify equitable tolling, then limitations on actions would be meaningless for an enormous cross section of job applicants who belong to a protected category (assuming Mr. Duckworth qualified as an applicant). I do not read Morris or LePage to condone such a liberal approach to equitable tolling.

account of his age.[9] This was particularly the case as the months lengthened into years in his effort to return to work at Mid-State. If an applicant suspects age discrimination, both the ADEA and the MHRA afford a period of months in which to explore, independently, what facts and circumstances can be uncovered to support an administrative charge of discrimination. Before the expiration of this time period, the applicant can enhance his investigation by filing an administrative charge and enlisting the assistance of the EEOC or the state agency with regulatory authority to investigate and remediate employment discrimination. Statutory time constraints placed on this process might be equitably modified under certain circumstances, but equity does not call for a wholesale suspension of the periods of repose based on a three year old representation and a desultory intervening effort to pursue employment. On the facts of this case, Mr. Duckworth failed to pursue administrative relief with reasonable diligence as far as hiring decisions in 2005, 2006, and 2007 are concerned. This bars him from pursuing related claims under the ADEA. Moreover, Mr. Duckworth's failure to bring his MHRA claim within two years of the accrual date associated with these hires bars the related claims outright under these circumstances. 5 M.R.S. § 4613(2)(C).

---

[9] By analogy, in the context of medical causation questions, there is a requirement that a person must investigate the situation when he comes to believe in a particular cause of his harm. Albert v. Me. C. R. Co., 905 F.2d 541, 544 (1st Cir. 1990). It is particularly difficult to embrace Mr. Duckworth's theory that he had no reason to suspect discriminatory animus until he received certain administrative discovery in October of 2008. Mr. Duckworth filed his amended charge in March 2009, more than 300 days after the April 2008 job interview that gives rise to his original charge of discrimination and that portion of his civil action that is not challenged by the instant motion. (Compl. ¶¶ 24-28 (supplying April 2008 timeframe).) It seems rather peculiar to argue that Mr. Duckworth had not discovered enough to charge discrimination for failure to hire him over the course of 2005 through 2008, until almost a year after he came to suspect age discrimination in relation to an April 2008 hiring decision. The facts that caused Mr. Duckworth to suspect age discrimination in connection with the April 2008 hiring decision would certainly suffice to raise a reasonable suspicion with respect to Mid-State's failure to hire Duckworth over the preceding years despite what he wants to portray as a three-year period of continuous job applicant status.

**Conclusion**

For the reasons set forth above, I RECOMMEND that the Court GRANT Mid-State Machine Products' Motion for Partial Summary Judgment and restrict Mr. Duckworth's claims of employment discrimination to the 2008 hiring decision.  Should the Court adopt this recommendation, both counts of the complaint will remain, but Mr. Duckworth will not be able to pursue his claims with respect to discrete employment activity in 2005, 2006, or 2007.  The extent to which Mr. Duckworth may obtain discovery related to these foregone claims is not a subject of this Recommended Decision.  Nor is the admissibility of any such evidence at trial.

NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, and request for oral argument before the district judge, if any is sought, within fourteen (14) days of being served with a copy thereof.  A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

December 31, 2009