UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| GLENN DUCKWORTH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   CV-09-279-B-W |
| | ) |
| MID-STATE MACHINE PRODUCTS, | ) |
| | ) |
| Defendant. | ) |

**ORDER AFFIRMING IN PART AND REJECTING IN PART
THE RECOMMENDED DECISION OF THE MAGISTRATE JUDGE**

The issue is whether a job applicant's lack of knowledge that an adverse employment action occurred excuses his late filing of age discrimination claims under the Age Discrimination in Employment Act (ADEA) and the Maine Human Rights Act (MHRA). The employer moved for partial summary judgment arguing that both claims were time-barred and the Magistrate Judge recommended the Court grant the motion. The Court has reviewed and considered the Magistrate Judge's Recommended Decisions, together with the entire record, and has made a *de novo* determination of all matters adjudicated by the Magistrate Judge's Recommended Decision. The Court rejects in part and affirms in part the Magistrate Judge's Recommended Decision and denies in part and grants in part the partial motion for summary judgment.

**I.    STATEMENT OF FACTS**

Glenn Duckworth worked as a Gage Control Technician[1] at Mid-State Machine Products (Mid-State) from 1995 until 2002. In May, June, and July of 2005, Mr. Duckworth contacted Mid-State about employment and was told the company was not hiring. Based on Mid-State's representations, Mr. Duckworth believed that Mid-State was in fact not hiring. In 2007, Mr.

---

[1] The Court adopts the spelling used by the Magistrate Judge and Mid-State. Mr. Duckworth referred to the position as a "Gauge Control Technician."

Duckworth dropped off a résumé but did not complete an application or make an employment inquiry.[2]

In April 2008, Mr. Duckworth applied for an advertised Gage Control Technician position but a much younger candidate was hired. On June 20, 2008, Mr. Duckworth filed a charge of age discrimination with the Equal Employment Opportunity Commission (EEOC) and the Maine Human Rights Commission (MHRC) in regards to Mid-State's April 2008 hiring decision. From discovery provided in October 2008, Mr. Duckworth learned that Mid-State had filled Gage Control Technician positions in July 2005, August 2006, and March 2007 with much younger candidates. On March 26, 2009, Mr. Duckworth amended his EEOC and MHRC age discrimination charges to include Mid-State's 2005, 2006, and 2007 hiring decisions.

On June 26, 2009, Mr. Duckworth initiated the current lawsuit, alleging age discrimination under both the ADEA and the MHRA for Mid-State's failure to hire him in 2005, 2006, 2007 and 2008. *Compl.* (Docket # 1). On October 16, 2009, Mid-State filed an amended motion for partial summary judgment against Mr. Duckworth's 2005, 2006, and 2007 claims, arguing (1) Mr. Duckworth is not covered by the ADEA or the MHRA because he was neither an employee nor an applicant; and, (2) his claims are time-barred under both the ADEA and the MHRA. *Am. Mot. for Partial Summary J.* (Docket # 23).[3] In an order on October 28, 2009, the Magistrate Judge stayed the portions of the motion for summary judgment not related to the

---

[2] This fact has been included in the Defendant's statement of material fact, but Mid-State cites Mr. Duckworth's Complaint. *Def.'s Statement of Material Fact* ¶ 22 (Docket # 24). Mr. Duckworth also makes the claim in his statement of material fact but provides no record citation. *Pl.'s Statement of Material Fact* ¶ 22 (Docket # 31) (asserting the fact without a record citation). For example, Mr. Duckworth has not included this assertion in his affidavit. *Aff. of Glenn Duckworth* Attach. D (Docket # 31). Mr. Duckworth includes the fact in his objection to the Magistrate Judge's recommended decision but cites to the Defendant's statement of material fact (which in turn cites the Plaintiff's complaint). *Obj. to Recommended Decision* (Docket # 39) (*Obj. to Rec. Dec.*). Although not in the record, both parties appear to agree that this résumé drop in fact occurred, and the Court includes the fact for the time being, assuming that the evidentiary deficiency is related to Mr. Duckworth's focus on the timeliness issue.

[3] Mid-State filed its initial motion for partial summary judgment on September 10, 2009. *Mot. for Partial Summary J.* (Docket # 10).

timeliness issue. *Order*.[4] On November 18, 2009, Mr. Duckworth submitted a response in opposition to Mid-State's amended motion for partial summary judgment. *Resp. in Opp'n to Am. Mot. for Summ. J.* (Docket # 30). Mid-State replied on November 30, 2009. *Reply to Resp. in Opp'n to Am. Mot. for Summ. J.* (Docket # 35).

On December 31, 2009, the Magistrate Judge recommended that the Court grant Mid-State's partial motion for summary judgment. *Recommended Decision* (Docket # 38) (*Rec. Dec.*). The Magistrate Judge concluded that Mr. Duckworth's 2005, 2006, and 2007 claims are time-barred by both the ADEA's 300-day and the MHRA's 6-month limitation.[5] First, because under both federal and state law the limitations period begins to run "when the employee learns of the adverse employment action," the Magistrate Judge found that the limitation period began at the point Mid-State informed Mr. Duckworth there were no available employment opportunities. *Rec. Dec.* at 5 (quoting *Morris v. Gov't Dev. Bank*, 27 F.3d 746, 749 (1st Cir. 1994)); *LePage v. Bath Iron Works Corp.*, 2006 ME 130, ¶ 15, 909 A.2d 629, 635 (applying *Morris*' language to the MHRA). Second, the Magistrate Judge concluded that equitable tolling was inapplicable because Mr. Duckworth knew of his ADEA and MHRA rights, and in balancing the equities, Mr. Duckworth's lack of diligence and the duration of the tolling period requested outweighed any misleading conduct on the part of Mid-State.

---

[4] More precisely, the Magistrate Judge lifted the stay on the timeliness issue and continued the stay on the remaining issues. Mr. Duckworth initially responded to the partial motion for summary judgment with a 56(f) motion to stay the motion for partial summary judgment for additional discovery (Docket # 14) and a motion to stay his response deadline to the partial summary judgment motion until a ruling on the 56(f) motion. (Docket # 15). On September 22, 2009, the Magistrate Judge stayed Mr. Duckworth's response until 21 days after her ruling on the 56(f) motion. *Order* (Docket # 19). Thus, when the Magistrate Judge ruled on the 56(f) motion, a stay was already in place.

[5] Because 29 U.S.C. § 633(b) applies, the ADEA requires that the filing with the EEOC must occur "within 300 days after the alleged unlawful practice occurred." 29 U.S.C. § 626(d)(1)(B). The limitation for filing an administrative charge under the MHRA was six-months at the time of this action. 5 M.R.S.A. § 4611 (2002). It has since been expanded to 300 days. P.L. 2009, ch. 235, § 1; L.D. 1108 (124th Legis. June 2, 2009). In addition to the administrative filing deadline, the MHRA imposes a two-year statute of limitations on the commencement of the civil action. 5 M.R.S.A. § 4613(2)(C). The federal statute has no equivalent provision.

On January 19, 2010, Mr. Duckworth objected to the Magistrate Judge's conclusion, arguing that his 2005 claim is not time-barred because he did not receive notice of the adverse employment action until October 2008. *Obj. to Rec. Dec.*[6] Mid-Coast responded on February 2, 2010. *Resp. to Obj. to Rec. Dec.*

## II.   DISCUSSION

### A.   Position of the Parties

Mr. Duckworth objects to the Recommended Decision by emphasizing that he is not suggesting that "relevant deadlines in discrimination cases should be tolled until a plaintiff has sufficient evidence to support an inference of discrimination." *Obj. to Rec. Dec.* at 1. Instead, he argues that the limitations period did not begin until October 2008 because until then he had "received absolutely no notice that there had been a hiring decision in 2005." *Id*. Mr. Duckworth contends that *Morris* and *LePage*, the two cases relied on by the Magistrate Judge, support his position: both cases start the limitations period at the point the plaintiff received "unambiguous and authoritative notice" of an adverse employment action. *Id*. at 2.

Mr. Duckworth makes two arguments for why such treatment makes practical sense. First, because a failure-to-hire claim requires that an applicant be passed over for an open

---

[6] Mid-State contends that Mr. Duckworth failed to object to the Magistrate Judge's conclusions regarding his 2006 and 2007 claims and that this portion of the Magistrate Judge's recommended decision is not subject to *de novo* review. *Resp. to Obj. to Recommended Decision* at 1-2 (Docket # 44) (*Resp. to Obj. to Rec. Dec.*). The Court agrees with Mid-Coast. The Magistrate Judge framed Mid-State's motion: "Defendant Mid-State Machine Products has filed a motion for partial summary judgment against claims premised on discrete employment decisions made by Mid-State in each of the three years from 2005 to 2007—one employment decision in each year." *Rec. Dec.* at 1. The Magistrate Judge recommended that the motion for partial summary judgment be granted and that Mr. Duckworth's claim be restricted to "the 2008 hiring decision." *Id.* at 10.
   Mr. Duckworth, however, has expressly limited his objection to the 2005 hiring decision. *Obj. to Rec. Dec.* at 1, n.1. He states that he disagrees with the Recommended Decision's "characterization of Plaintiff's legal argument relating to the accrual of limitations periods for Plaintiff's 2005 failure to hire claim." *Id.* at 1. To remove any ambiguity, Mr. Duckworth, noting that he had presented an argument on equitable tolling from three different hiring decisions, says that "this Objection focuses only on the factual and legal arguments relating *to the appropriate accrual of the limitations periods for Plaintiff's 2005 failure to hire claim.*" *Id.* at 1, n.1 (emphasis added).
   Mr. Duckworth's position could not be plainer. He does not object to the Magistrate Judge's equitable tolling decisions and is pursuing only the issue of accrual on the 2005 failure to hire. The Court affirms the Magistrate Judge's recommendations on the 2006 and 2007 claims.

position, "job applicants who are told by an employer that the employer is not hiring [are] in the impossible position of filing a Charge of Discrimination in order to preserve their rights only to lose their rights when the Charge is dismissed for failure to state a claim." *Id*. at 3 n.2. Second, to hold otherwise would be to impose an obligation on applicants "to investigate whether they may have been subjected to adverse employment actions." *Id*. at 4.

Mid-State argues, and the Magistrate Judge agreed, that from its statements in 2005, Mr. Duckworth "reasonably could have drawn the inference that Mid-State had rejected him," triggering the start of the limitations period. *Resp. to Obj. to Rec. Dec*. at 3; *Rec. Dec*. at 8. Mid-State emphasizes that the First Circuit in *O'Neill v. New York Times* found that an employee's lack of knowledge that an adverse action was undertaken for discriminatory motives did not affect the limitations period. *Reply to Resp. in Opp'n to Am. Mot. for Summ. J*. at 10 (citing *O'Neill v. New York Times Co*., 145 Fed. Appx. 691, 694 (1st Cir. 2005)). Analogizing Mr. Duckworth's lack of knowledge about the existence of a hiring decision with the employee's lack of knowledge in *O'Neil*, Mid-State argues that Mr. Duckworth's ignorance in 2005 is equally irrelevant to the limitations period. *Id*. at 10-11.

B. **Legal Standard**

Mr. Duckworth's alleged lack of notice is relevant to both when the statute of limitations period began and whether Mid-State is prevented from arguing that his claim is time-barred. The First Circuit is clear that "the limitations period begins to run when the claimant receives unambiguous and authoritative notice of the discriminatory act (which is another way of saying that the period beings to run when the employee learns of the adverse employment action)." *Morris*, 27 F.3d at 749.[7] The critical question is "at what juncture did [the employee/applicant]

---

[7] The Maine Supreme Judicial Court adopted the language from *Morris* in determining when the limitations period for administrative filings under the MHRA is triggered. *LePage*, 2006 ME ¶ 15. The parties have identified no

reliably know of the injury to which this lawsuit relates?" *Id.* Mid-State is correct that a plaintiff "need not know all the facts to support his claim in order for the countdown to commence." *Resp. to Obj. to Rec. Dec.* at 3 (quoting *Morris*, 27 F.3d at 750). Once a plaintiff "[knows] the stated reason for [the employer's action], and [is able to] assess its legitimacy," the First Circuit places the burden on the employee to uncover the employer's discriminatory motive. *Morris*, 27 F.3d at 750. *Morris* is clear, however, that the plaintiff must "know[] that he has been hurt and also know[] that his employer has inflicted the injury." *Id.* Even though the First Circuit squarely places the onus on employees to investigate adverse employment decisions, the employee has no injury to investigate absent notice.[8]

Even if the limitation period has run, late filing is excused if the employer is responsible for the failure of the employee or applicant to timely file. In such situations, estopping the employer from arguing that the complaint is time-barred thwarts its attempts to "escape liability by engaging in misconduct that prevents the plaintiff from filing his or her claim on time." *Kale v. Combined Ins. Co. of Am.*, 861 F.2d 746, 751 (1st Cir. 1988). "Equitable estoppel occurs where an employee is aware of his ADEA rights but does not make a timely filing due to his reasonable reliance on his employer's misleading or confusing representations or conduct." *Id.* This relief is only granted in "extraordinary circumstances," *Cerbone v. International Ladies' Garment Workers' Union*, 768 F.2d 45, 48-49 (2d Cir. 1985), and a plaintiff must show "either the employer's improper purpose or his constructive knowledge of the deceptive nature of his

---

substantive differences between the start of the limitations period under the MHRA and the ADEA, and the Court analyzes both limitation periods under ADEA case law.

[8] Mid-State also contends that Mr. Duckworth should have "enhance[d] his investigation by filing an administrative charge and enlisting the assistance of the EEOC or the state agency with regulatory authority to investigate and remediate." *Id.* (quoting *Rec. Dec.* at 9). Although suggesting that Mr. Duckworth's failure to investigate makes him responsible for his lack of notice, Mid-State provides no authority for this proposition beyond citing to the recommended decision. The portion of the recommended decision that faults Mr. Duckworth for his lack of diligence, however, was made in the context of a discussion of whether equitable tolling was appropriate once notice was provided, not whether Mr. Duckworth was provided notice.

conduct." *Kale*, 861 F.2d at 751 (citing *Price v. Litton Business Systems, Inc.*, 694 F.2d 963, 965 (4th Cir. 1982) (excusing an employee's failure to timely file when it is the consequence "either of a deliberate design by the employer or of actions that the employer should unmistakably have understood would cause the employee to delay filing his charge")).

Regardless which theory is used, Mr. Duckworth's alleged lack of notice prevents his claim from being time-barred. The difference between being passed over, demoted, fired, or rejected, and being told there is no position available is subtle. Vindication of the first set of injuries—promotion, demotion, termination, and rejection—commonly depends on the employees or applicants not accepting at face value what they are told by the employer. Because such injuries indicate to the employee or applicant that the employer has made a conscious employment decision specific to the employee/applicant, the First Circuit places a burden on the rejected person to investigate the real reason behind the employment action.

Although this general principle could apply here, from the Court's perspective, there must be a different analysis when the employer stymies employment inquiries by making an active misrepresentation that there are no open positions. Absent some suggestion that the applicant knew or should have known about the misrepresentation, an applicant would have no reason to conclude that the employer's statement in truth represented a decision about the applicant. This situation is distinguishable from the run of the mill employment decisions involving currently employed individuals or applicants to open positions. In either of those situations, the person knows that the employer has made an adverse decision and the law imposes some obligation on that person to pursue the true reason for the disappointing result. But, if the employer tells an applicant that there is no job, the person would normally have no grounds for surmising that the employer's statement masked a discriminatory hiring decision;

namely, that there is an available position but not for people like you. Most people simply accept the employer's representation and move on, knocking on other, more promising doors.

There is little direct law on this narrow circumstance, presumably because few applicants who are misled about the availability of work later learn that the employer was misleading them. But, a straightforward application of the principle that the limitations period does not begin to run until the plaintiff "receives unambiguous and authoritative notice of the discriminatory act" provides authority for the counterproposition: when the applicant receives unambiguous and authoritative notice that there is no available employment, the time limit does not commence until the applicant receives "unambiguous and authoritative notice" that the employer lied. *Morris*, 27 F.3d at 749. At the very least, the employer is equitably estopped from asserting that the statute of limitations period runs during the time the applicant believed to his detriment that the employer was telling the truth.

Here, although Mid-State's adverse hiring decision was made in 2005, Mid-State's notice to Mr. Duckworth that the company was not hiring did not alert him to the true nature of Mid-State's action. Mr. Duckworth was not notified of the adversity of Mid-State's 2005 decision until he learned that Mid-State had in fact been hiring, and Mid-State should have known that its statement would mislead Mr. Duckworth into mistakenly believing that an adverse action did not occur. For purposes of summary judgment, Mr. Duckworth has submitted sufficient evidence to suggest that he did not receive notice of the adverse employment action until October 2008 and that Mid-State's misstatements were responsible for the delay.

## III.   CONCLUSION

The Court REJECTS the Recommended Decision on Mr. Duckworth's 2005 claim (Docket # 38) and DENIES Mid-State's amended partial motion for summary judgment on Mr.

Duckworth's 2005 claim (Docket # 23).  The Court AFFIRMS the Recommended Decision on Mr. Duckworth's 2006 and 2007 claims (Docket # 38) and GRANTS Mid-State's amended partial motion for summary judgment on Mr. Duckworth's 2006 and 2007 claims (Docket # 23).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
CHIEF UNITED STATES DISTRICT JUDGE

Dated this 5th day of April, 2010