UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

GLENN DUCKWORTH,                    )
                                   )
            Plaintiff,             )
                                   )
    v.                             )          CV-09-279-B-W
                                   )
MID-STATE MACHINE PRODUCTS,        )
                                   )
            Defendant.             )

**ORDER ON MOTIONS FOR SUMMARY JUDGMENT**

Concluding that Glenn Duckworth has generated genuine issues of material fact that prevent summary judgment in favor of Mid-State Machine Products (Mid-State), the Court denies Mid-State's dispositive motions in this Age Discrimination in Employment Act (ADEA) and Maine Human Rights Act (MHRA) case.

I.      **STATEMENT OF FACTS**

        A.      **Procedural History**

        On June 26, 2009, Glenn Duckworth filed a complaint in this Court asserting that his former employer Mid-State violated the ADEA and the MHRA by refusing to hire him and by hiring younger workers instead.  *Compl.* (Docket # 1).  The case quickly became mired in motions.  On September 9, 2009, Mid-State moved for partial summary judgment.  *Mot. for Partial Summ. J.* (Docket # 10) (*Def.'s Partial Mot.*).  On September 18, 2009, Mr. Duckworth responded with a motion to stay or dismiss Mid-State's motion pursuant to Rule 56(f).  *Pl.'s Mot. to Stay or Dismiss Def.'s Mot. for Partial Summ. J. Pursuant to F. R. Civ. P. Rule 56(f)* (Docket # 14).

By consent, on September 22, 2009, the time within which Mr. Duckworth was required to respond to Mid-State's motion for summary judgment, was stayed until twenty-one days after ruling on the Rule 56(f) motion. *Pl.'s Consented To Mot. to Stay Pl.'s Deadline for Opposing Def.'s Mot. for Partial Summ. J.* (Docket # 15); *Order* (Docket # 19). On October 6, 2009, Mid-State objected to the motion to stay or dismiss. *Def.'s Opposition to Pl.'s Mot. to Stay or Dismiss Def.'s Partial Mot. for Summ. J. Pursuant to Federal Rule of Civil Procedure 56(f)* (Docket # 20). On October 16, 2009, Mid-State filed an amended motion for partial summary judgment. *Def.'s Am. Mot. for Partial Summ. J.* (Docket # 23) (*Def.'s Am. Partial Mot.*). On October 19, 2009, Mr. Duckworth replied to Mid-State's opposition to his motion to stay and to dismiss. *Pl.'s Reply to Def.'s Opp'n and Am. Opp'n to Pl.'s Mot. to Stay or Dismiss Def.'s Mot. for Partial Summ. J. Pursuant to F.R. Civ. P. 56(f)* (Docket # 26).

On October 28, 2009, the Magistrate Judge let stand her September 22, 2009 Order staying the response time for the pending motion for summary judgment except insofar as the motion raised a non-factual defense about whether Mr. Duckworth's claims were time-barred. *Order on Rule 56(f) Mot.* (Docket # 28). On November 18, 2009, Mr. Duckworth responded to the amended motion for partial summary judgment. *Pl.'s Opp'n to Def.'s Am. Mot. for Partial Summ. J.* (Docket # 30) (*Pl.'s Partial Opp'n*). Mid-State replied on November 30, 2009. *Def.'s Reply to Pl.'s Opp'n to Def.'s Mot. for Partial Summ. J.* (Docket # 35) (*Def.'s Partial Reply*). On December 31, 2009, the Magistrate Judge issued a recommended decision on the

motion for partial summary judgment. *Recommended Decision on Mot. for Partial Summ. J.* (Docket # 38). On January 28, 2010, Mr. Duckworth objected to the Recommended Decision. *Pl.'s Ob. to the Magistrate Judge's Recommended Decision on Def.'s Mot. for Partial Summ. J.* (Docket # 39). Mid-State responded on February 2, 2010. *Def.'s Resp. to Pl.'s Ob. to the Recommended Decision on Def.'s Mot. for Partial Summ. J.* (Docket # 44). On April 5, 2010, the Court issued an order affirming in part and rejecting in part the Magistrate Judge's Recommended Decision. *Order Affirming in Part and Rejecting in Part the Recommended Decision of the Magistrate Judge* (Docket # 49).

Meanwhile, on January 28, 2010, Mid-State filed another motion for summary judgment. *Def.'s Mot. for Summ. J.* (Docket # 40) (*Def.'s Mot.*). On April 14, 2010, the Magistrate Judge held a conference to resolve the confusion about the status of the pending motions. She ordered Mr. Duckworth to file by April 26, 2010 a unified response to Mid-State's October 16, 2009 amended motion for partial summary judgment and its January 28, 2010 motion for summary judgment. *Report of Telephone Conference and Order* (Docket # 52). On April 26, 2010, Mr. Duckworth filed a consolidated response in opposition to both pending dispositive motions. *Pl.'s Opp'n to Def.'s Mot's. for Summ. J.* (Docket # 53) (*Pl.'s Opp'n*). Mid-State filed a consolidated reply on May 7, 2010. *Def.'s Reply to Pl.'s Opp'n to Def.'s Mot. for Summ. J.* (Docket # 61) (*Def.'s Reply*).[1]

---

[1] In Mid-State's Reply Statement of Material Facts, it moved to strike a number of Mr. Duckworth's statements. *Def.'s Reply to Pl.'s Additional Statement of Material Facts* (Docket # 60). On May 13, 2010, Mr. Duckworth responded under Local Rule 56(f). *Pl.'s Responses to Def.'s Obs.* (Docket # 62).

**B.     A Summary of the Remaining Allegations[2]**

Mid-State employed Glenn Duckworth as a Gage Control Technician from 1995 until 2002, when it terminated his employment due to a workforce reduction, not his performance. *Compl.* ¶¶ 14-15. When terminated, Mid-State informed him that he was eligible to be rehired. *Id.* ¶ 17. From May through July 2005, Mr. Duckworth contacted Mid-State about re-employment but was not hired. *Id.* ¶ 18. Instead, on July 6, 2005, Mid-State hired a 26 year old applicant for a Gage Control Technician position. *Id.* ¶ 19. Mr. Duckworth contends this 26 year old was significantly less qualified for the position than Mr. Duckworth. *Id.*

In April 2008, Mr. Duckworth applied to Mid-State for the advertised position of Gage Control Technician. *Id.* ¶ 24. Mr. Duckworth was 60 years old. *Id.* ¶ 27.[3] Mid-State interviewed Mr. Duckworth for the position but its managers treated him with hostility and told him incorrectly that his work quality from 1995 to 2002 was poor. *Id,* at ¶25, 26. A Mid-State manager informed him that it was looking to hire someone who would be with the company for a long time. *Id.* Mid-State did not hire Mr. Duckworth for this position and instead hired someone 34 years old and less qualified than Mr. Duckworth. *Id.* ¶ 27; *Pl.'s Opp'n.* at 22.

---

[2] In his Complaint, Mr. Duckworth claimed that he had applied to Mid-State in 2006 and 2007 and had not been hired. The Magistrate Judge concluded these claims were time-barred and Mr. Duckworth failed to object to that portion of her Recommended Decision. The Court therefore affirmed partial summary judgment against the 2006 and 2007 claims without objection. *Order Affirming in Part and Rejecting in Part the Recommended Decision of the Magistrate Judge* at 4 n.6 (Docket # 49).

[3] Mr. Duckworth's date of birth is not part of the record; the Court estimated his age from the allegations in the Complaint.

### C. Mid-State's Motion for Partial Summary Judgment

#### 1. Mid-State's Position

One issue survives the Court's April 5, 2010 Order on Mid-State's motion for partial summary judgment: whether Mr. Duckworth's claim of age discrimination in 2005 fails as a matter of law because he never applied for the position. *Report of Telephone Conference and Order* (Docket # 52). Mid-State notes that the ADEA and the MHRA apply only to "applicants." *Def.'s Am. Partial Mot.* at 6; 5 M.R.S. § 4572(1)(A); 29 U.S.C. § 623(a)(1).[4]

#### 2. Mr. Duckworth's Response

Mr. Duckworth responds that the ADA does not require that an employee file a formal application in order to come within its protections. *Pl.'s Opp'n* at 8-9.

#### 3. Mid-State's Reply

Mid-State replies by distinguishing Mr. Duckworth's case law, by claiming that Mr. Duckworth never actually applied for the Gage Control Technician position in 2005, by saying that there was no open position for a Gage Control Technician in 2005 since Mid-State only posted the position internally, and finally, by saying that even if Mr. Duckworth made out a prima facie case, he failed to prove that age was the "but for" cause of Mid-State's decision not to hire him in 2005. *Def.'s Reply* at 4-8.

---

[4] In its September 10, 2009 motion for partial summary judgment, Mid-State contended that Mr. Duckworth was not qualified for the Gage Control Technician position because it sought applications only from internal candidates. *Def.'s Partial Mot.* at 4, 7. However, on October 16, 2009, Mid-State filed an amended motion for partial summary judgment, conceding that the person it had hired in 2005 was, in fact, an outside applicant. *Def.'s Am. Mot.* at 3-5.

### D. Mid-State's Motion for Summary Judgment

#### 1. Mid-State's Position

In its January 28, 2010 motion for summary judgment, Mid-State cites *Gross v. FBL Fin. Servs., Inc.* for the proposition that in an ADEA claim, a plaintiff "must prove that age was the 'but-for' cause of the employer's adverse decision." *Def.'s Mot.* at 3 (citing *Gross*, 129 S. Ct. 2343, 2351 (2009)). Mid-State says the federal standard should be applied to the MHRA. *Id.* Restricting its motion to Mr. Duckworth's 2008 application, Mid-State says that Mr. Duckworth cannot produce direct evidence of age discrimination and cannot sustain his burdens under the three-stage burden shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Id.* at 4-19.

#### 2. Mr. Duckworth's Position

Mr. Duckworth responds that he has sustained his burden to make out a prima facie case of age discrimination in 2008. *Pl.'s Opp'n.* at 11-13. Claiming that Mid-State's sole explanation for why it did not hire him in 2008 is that he was not "qualified" for the job, he says he was clearly qualified because he had ably performed the job previously for over six years. *Id.* at 11-12. He contends that he has produced sufficient evidence that Mid-State's "legitimate non-discriminatory" explanations for its decision are pretexts: 1) that their stated reasons are false; and, 2) that the record has generated jury questions about whether Mid-State was motivated by discriminatory animus. *Id.* at 13-30.

### 3.    Mid-State's Reply

In its Reply, Mid-State reiterates its view that Mr. Duckworth has gone to "great lengths to accuse Defendant of willingly manufacturing evidence and lying under oath." *Def.'s Reply* at 1.   Nevertheless, Mid-State claims that Mr. Duckworth's accusations are "unwarranted and baseless" and are "merely intended to distract the Court from the real issue in this case – that there is no evidence of 'but-for' age discrimination by Mid-State at any time." *Id.* at 1-2.

## II.    DISCUSSION

### A.    Summary Judgment Standard

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2).   For summary judgment purposes, "'genuine' means that the evidence is such that a reasonable jury could return a verdict for the nonmoving party, and a 'material fact' is one which might affect the outcome of the suit under the governing law." *Buchanan v. Maine*, 469 F.3d 158, 166 (1st Cir. 2006) (quoting *Seaboard Sur. Co. v. Town of Greenfield*, 370 F.3d 215, 218-19 (1st Cir. 2004)) (internal quotation marks omitted). "Neither conclusory allegations [nor] improbable inferences are sufficient to defeat summary judgment." *Carroll v. Xerox Corp.*, 294 F.3d 231, 236-37 (1st Cir. 2009) (citation and internal quotation marks omitted).

**B.     The Motion for Partial Summary Judgment: Whether the ADEA or the MHRA Requires a Formal Application**

**1.  The ADEA Claim**

Mid-State badly misquotes 29 U.S.C. § 623(a)(1).  In its memorandum, Mid-State states:

> It is unlawful employment discrimination under the MHRA to ". . . fail or refuse to hire, or otherwise discriminate against any *applicant* for employment, because of . . . age."  5 M.R.S.A. § 4572(1)(A) (emphasis supplied).

*Def.'s Am. Partial Mot.* at 6.  Mid-State then asserts:

> Similarly, under the ADEA it is likewise unlawful discrimination to refuse to hire an *applicant* because of his or her age.  29 U.S.C. § 623(1).[5]

*Def.'s Am. Partial Mot.* at 6 (emphasis in motion).  In fact, § 623(a)(1) of title 29 says no such thing.  Contrary to Mid-State's emphasized representation, § 623(a)(1) does not use the word "applicant":

> It shall be unlawful for an employer (1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of the individual's age.

29 U.S.C. § 623(a)(1).  The rest of Mid-State's argument is premised on the erroneous assumption that in order to proceed with an ADEA claim, the Act expressly requires that a claimant have been an *applicant*.  It does not.

---

[5] Mid-State's Amended Motion for Partial Summary Judgment actually cites 29 U.S.C. § 623(1), a subsection that does not exist.  *Def.'s Am. Partial Mot.* at 6.  Mid-State must have intended to cite 29 U.S.C. § 623(a)(1).  Thus, Mid-State both miscites and misquotes § 623(a)(1).  To give Mid-State the benefit of the doubt and to be certain that Mid-State's misquotation of § 623(a)(1) was not an accurate quotation of another subsection 1 within § 623, the Court reviewed the remaining provisions of § 623.  None is applicable.

In 1978, addressing analogous provisions of Title VII, the Supreme Court clarified that to maintain a cause of action under the Civil Rights Act, a plaintiff must demonstrate that he "did everything within [his] power to apply for employment." *Furnco Constr. Co. v. Waters*, 438 U.S. 567, 576 (1978). The failure to file a formal application will not bar a plaintiff from establishing a *prima facie* case of discriminatory hiring provided the plaintiff "made every reasonable attempt to convey his interest in the job to the employer." *Equal Employment Opportunity Comm'n v. Metal Serv. Co.*, 892 F.2d 341, 348 (3d Cir. 1990) (Title VII claim); *Lakshman v. Univ. of Me.*, 328 F. Supp. 2d 92, 117 (D. Me. 2004); *Eldred v. Consolidated Freightways Corp. of Del.*, 898 F. Supp. 928, 938 (D. Mass. 1995). In *Paxton v. Union Nat'l Bank*, the Eighth Circuit addressed a situation not unlike Mr. Duckworth's. 688 F.2d 552 (8th Cir. 1982). In *Paxton*, an employee had expressed interest in a particular job, but his employer failed to post the vacancy and the employee did not learn of the vacancy until after it had been filled. *Id.* at 568. The Eighth Circuit concluded that "we cannot hold that Riley's prima facie case was defeated because he did not formally 'apply' for the lead control job." *Id.*; *Mauro v. Southern New Eng. Telecommunications, Inc.*, 208 F.3d 384, 387 (2d Cir. 2000) (stating that the application requirement does not apply "where, as here, the plaintiff indicated to the employer an interest in being promoted to a particular class of positions, but was unaware of specific available positions because the employer never posted them").

Against this authority, Mid-State cites *Marques v. Bank of Am.*, 59 F. Supp. 2d 1005 (N.D. Ca. 1999) for the proposition that there are only two situations where the law will allow an ADEA claim in the absence of an actual application: 1) when the "employer's established practice is to hire for certain positions without requiring formal applications", or 2) when the discrimination is so "entrenched or pervasive" that an application "would be futile." *Def.'s Am. Partial Mot.* at 7-8 (citing *Marques*, 59 F. Supp. 2d at 1017-18). Mid-State argues that neither applies here. *Def.'s Am. Partial Mot.* at 8. There is no suggestion that the latter situation existed at Mid-State.

Turning to the first exception, the *Marques* Court cited the Seventh Circuit case of *Box v. A & P Tea Co.*, 772 F.2d 1372 (7th Cir. 1985) as authority for the view that to state an employment discrimination claim in the absence of a formal application, there must be an "established practice" to hire without requiring formal applications. *Marques*, 59 F. Supp. 2d at 1017-18. The *Box* Court opinion should not be read so narrowly. In *Box*, the employer, A & P, did not have a systematic procedure for posting openings, and the Seventh Circuit concluded in that situation, the plaintiff "can establish the application element of a prima facie case by showing that, had she known of an assistant manager opening, she would have applied." *Id.* at 1377.

A helpful subsequent formulation is found in *Williams v. Giant Food, Inc.* in which the Fourth Circuit turned the question into an affirmative. 370 F.3d 423 (4th Cir. 2004). In *Williams*, the Fourth Circuit observed that "[i]f an employer has a

formal system of posting vacancies and allowing employees to apply for such vacancies, an employee who fails to apply for a particular position cannot establish a prima facie case of discriminatory failure to promote." *Id.* at 430. Under either formulation, the *Box* and *Williams* Courts' shared premise is that a claimant, who is unaware of a job opening because of an employer's actions or procedures, is not required to formally apply to a position she did not know existed. The same principle applies here. *Mauro*, 208 F.3d at 387 (stating that "an employee by definition cannot apply for a job that he or she does not know exists"); *Ricci v. Applebee's Northeast, Inc.*, 297 F. Supp. 2d 311, 322 (D. Me. 2003).

Mr. Duckworth claims that Multi-State misinformed him about the existence of an opening and he would have had no reason to apply to a position he did not know existed. Whether in this case, Mid-State was "well aware of" Mr. Duckworth's interest in the Gage Control Technician position is a matter of dispute. Viewing the facts in the light most favorable to Mr. Duckworth, however, the Court readily concludes that he survives summary judgment on this issue.

### 2. The MHRA Claim

Mid-State at least quotes the Maine statute correctly. The MHRA does prohibit discrimination against "any *applicant* for employment because of . . . age." 5 M.R.S. § 4572(1)(A) (emphasis added). Neither Mid-State nor Mr. Duckworth cited any case law from the state of Maine interpreting the statutory reference to "applicant." The Court could find none.

Mid-State quotes dictionary definitions of "applicant" and concludes that Mr. Duckworth never became an "applicant" within the common meaning of the word. *Def.'s Am. Partial Mot.* at 7 (citing Random House Dictionary (1990) (defining "applicant" as "a person who applies for or requests something: an applicant for a position",); Webster's II New Coll. Dictionary (2001) (defining "applicant" as "[o]ne who applies for a job or admission")). These definitions, however, beg the question: whether Mr. Duckworth became an "applicant" under Maine law when he inquired about a position and was falsely told none existed.

The absence of a statutory definition for "applicant" leaves an inherent ambiguity. The statute does not clarify whether a formal, written application is necessary or an oral expression of interest will suffice. An application process commonly begins with an inquiry, continues with an application, an interview, the checking of references, and a hiring decision. It is true that a "general expression of interest is insufficient to trigger any duty to consider on the part of the employer." *Marques*, 59 F. Supp. 2d at 1018. However, the inquiry is fact-specific and the main requirement is that "the job-seeker must make a reasonable attempt to demonstrate to the employer that he is interested in the job." *Owens v. Wellmont, Inc.*, 343 Fed. Appx. 18, 24 (6th Cir. 2009).

Taking Mid-State's argument to the extreme: assume Mid-State wished to hire only young, white males and had a policy of telling anyone who expressed interest in employment and did not fit these categories that there was no work. It is difficult to imagine that Maine law would view Mid-State's actions as beyond the

purview of the MHRA because an older, Hispanic female accepted the company's representations as true and did not formally apply for a position she was told did not exist. The more sensible view of "applicant" under the MHRA includes the question of whether the claimant took the employer's application process as far as the employer allowed it to go. In other words, the employer cannot use its successful attempt to waylay the application as a basis for its denial that a claimant who had attempted to apply was an applicant for purposes of Maine law. Viewing the facts in the light most favorable to Mr. Duckworth, he "applied" for the position to the extent Mid-State allowed him to apply.

This interpretation seems consistent with Maine law, which requires that "the meaning of a statute must be construed in light of the subject matter, purpose of the statute, and the consequences of a particular interpretation." *Home Builders Ass'n of Me., Inc. v. Town of Eliot*, 2000 ME 82, ¶ 14, 750 A.2d 566, 571-72 (quotation marks omitted). "The MHRA was enacted in 1971 to acknowledge 'the basic human right to a life with dignity' by preventing discrimination in 'employment, housing or access to public accommodations.'" *Whitney v. Wal-Mart Stores, Inc.*, 2006 ME 37, ¶ 8, 895 A.2d 309, 311 (citing 5 M.R.S. § 4552). As the Maine Supreme Judicial Court recently said, "[f]ederal law guides our construction of the MHRA." *Cookson v. Brewer Sch. Dep't*, 2009 ME 57 ¶ 14, 974 A.2d 276, 281; *Forrest v. Brinker Int'l Payroll Co.*, 511 F.3d 225, 228n.1 (1st Cir. 2007) (stating that "Maine courts apply the MHRA in accordance with federal anti-discrimination

law").[6]  To construe the MHRA as substantially limiting claimants rights in a fashion much more restrictive than its federal counterpart would be contrary to this rule of statutory construction and to the underlying purpose of the MHRA.  The Court rejects Mid-State's position that to file suit under the MHRA, Mr. Duckworth was required to file an application for employment.

### C.     The Motion for Summary Judgment

#### 1.     Gross v. FBL Financial Services and Velez V. Thermo King

In 2009, the United States Supreme Court decided *Gross v. FBL Financial Services*, 129 S. Ct. 2343, 2349 (2009).  Rejecting for ADEA claims the Title VII "motivating factor" analysis, the *Gross* Court stated that "[t]his Court has never held that this burden-shifting framework applies to ADEA claims."  *Gross*, 129 S. Ct. at 2349.  Instead, the Supreme Court held that "a plaintiff bringing a disparate-treatment claim pursuant to the ADEA must prove, by a preponderance of the evidence, that age was the 'but-for' cause of the challenged adverse employment action."  *Id.* at 2352.  The *Gross* Court emphasized that the "burden of persuasion does not shift to the employer to show that it would have taken the action regardless of age, even when a plaintiff has produced some evidence that age was one motivating factor in that decision."  *Id.*

Following *Gross*, the First Circuit in *Velez v. Thermo King de Puerto Rico, Inc.*, 585 F.3d 441 (1st Cir. 2009), clarified that the three stage burden-shifting

---

[6] To the extent that the Maine Courts have construed similar Maine statutes differently from their federal counterparts, the trend has been to expand, not contract claimants' rights.  *See Whitney v. Wal-Mart Stores, Inc.*, 2006 ME ¶ 24, 895 A.2d 315.

*McDonnell Douglas* framework remains applicable for ADEA claims absent direct evidence of discrimination:

> As with other kinds of employment discrimination cases, however, ADEA plaintiffs rarely possess 'smoking gun' evidence to prove their employer's discriminatory motivations. There will seldom be 'eyewitness' testimony to the employer's mental processes. ADEA plaintiffs who do not have 'smoking gun' evidence may nonetheless prove their cases by using the three stage burden-shifting framework set forth by the Supreme Court in *McDonnell Douglas*.

*Velez*, 585 F.3d at 446-47 (citations and internal quotations omitted).[7] The *Velez* Court succinctly reiterated the respective burdens for ADEA claims under *McDonnell Douglas*. To establish a prima facie case, the plaintiff must show: 1) that he was at least 40 years old at the time he was not hired; 2) that he was qualified for the position; 3) that he was not hired; and, 4) that the employer subsequently filled the position with a younger person of similar qualifications.[8] *Id.* at 447. The First Circuit has consistently described "this prima facie showing as 'modest' and a 'low standard.'" *Id.* (citations omitted). Once the ADEA plaintiff makes a prima facie showing, he is entitled to "a presumption of age-based discrimination." *Id.*

The burden of production shifts to the employer to "articulate a legitimate, non-discriminatory reason for its decisions." *Id.* (citation omitted). As the First Circuit has stated, an employer's obligation at this stage "entails only a burden of production, not a burden of persuasion; the task of proving discrimination remains

---

[7] The First Circuit observed that it will continue to apply the *McDonnell Douglas* framework "[u]ntil told otherwise by the Supreme Court." *Velez*, 585 F.3d at 447 n.2.

[8] *Velez* involved discriminatory discharge, not refusal to hire. To arrive at this formulation, the Court combined *Velez* and *Arroyo-Audifred v. Verizon Wireless, Inc.*, 527 F.3d 215, 219 (1st Cir. 2008).

the claimant's at all times." *Mesnick v. General Elec. Co.*, 950 F.2d 816, 823 (1st Cir. 1991). Once the employer comes forward with such a reason, "the *McDonnell Douglas* framework - - with its presumptions and burdens - - is no longer relevant." *Velez*, 585 F.3d at 447 (citation omitted).

If the employer meets that burden of production, the sole remaining issue becomes "discrimination *vel non*." *Id.* A plaintiff must "be afforded the opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Id.* at 447-48 (citation omitted). Following *Gross*, the plaintiff's burden at this final stage is to prove "that age was the 'but-for' cause of the employer's adverse action." *Id.* at 448.

### 2.    Mr. Duckworth's Prima Facie Case

Mid-State does not contest that Mr. Duckworth meets many of the criteria for a prima facie case: he is more than 40 years old, he applied for the Gage Control Technician position in 2008, he was not hired, and Mid-State hired a younger person. *Def.'s Mot.* at 7 (stating that for purposes of the motion Mid-State concedes that Mr. Duckworth "has satisfied his burden to prove the first, third, and fourth elements of a *prima facie* case"). The remaining contested issue is whether Mr. Duckworth was qualified for the position.

Mr. Duckworth points out that he had the technical wherewithal to perform the position since he had competently done the job for six years. In fact, Mid-State does not disagree. *Id.* (stating that "Duckworth's deficiencies during his interviews

with Mid-State were not in his technical capacities, but in his attitude toward the interviewers and the job itself"). Mid-State posited three criteria for the position: 1) basic capacity to perform the technical requirements, a very low standard; 2) willingness to take initiative and show ownership; and, 3) work ethic. *Id.* Mid-State asserts that Mr. Duckworth did not possess the latter two attributes. *Id.*

Mr. Duckworth naturally objects to Mid-State's assertion that he failed the job interview. *Pl.'s Opp'n.* at 6-7. He accuses Mid-State of misrepresenting what happened in the interviews. *Id.* at 6. For example, he claims that Mr. Bourgoin began his interview by falsely accusing him of waiting by the time clock at the end of each day when he had previously worked at Mid-State. *Id.*

Mid-State is correct that an employer's use of purely subjective criteria does not mean that an employer engaged in impermissible discrimination. *Def.'s Mot.* at 8. But in the context of a motion for summary judgment, where the question is whether a plaintiff has met the low threshold to meet the prima facie stage of the *McDonnell Douglas* framework, a series of contested facts such as the facts in this case dooms this portion of the employer's motion. In fact, in *Velez*, the First Circuit adopted the Sixth Circuit's prohibition against using an employer's alleged nondiscriminatory reasons in evaluating whether the plaintiff met his prima facie burden:

> [A] court may not consider the employer's alleged nondiscriminatory reason for taking an adverse employment action when analyzing the prima facie case. To do so would bypass the burden-shifting analysis and deprive the plaintiff of the opportunity to show that the nondiscriminatory reason was in actuality a pretext designed to mask discrimination.

*Velez*, 585 F.3d at 448 (quoting *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 574 (6th Cir. 2003) (en banc)).

Here, viewing the evidence in the light most favorable to Mr. Duckworth, he has stated facts sufficient to meet the initial burden for a prima facie case of age discrimination.

### 3.     Mid-State's Legitimate, Non-Discriminatory Business Reasons

Mid-State has satisfied its burden of production by presenting legitimate, non-discriminatory business reasons for its decision not to hire Mr. Duckworth. *Def.'s Mot.* at 8-14. It contends that Mr. Duckworth failed his interview and Mr. Berry, the successful candidate, was a better candidate for the position. *Id.*

### 4.     Mr. Duckworth's Evidence of Pretext

The real battle is whether Mr. Duckworth has produced sufficient evidence to generate a genuine issue of material fact as to whether Mid-State's stated reasons for not hiring him "were not its true reasons, but were a pretext for discrimination." *Velez*, 585 F.3d at 447-48.

### a.     The First Circuit, Pretext, and Summary Judgment

A review of the applicable law is in order. The First Circuit has set down some guideposts for determining whether an age employment discrimination claim should survive summary judgment.[9] To withstand a motion for summary judgment, the plaintiff must produce evidence that "enables a factfinder reasonably to infer,"

---

[9] In discussing these decisions, the First Circuit updated these principles to reflect the Supreme Court's *Gross* decision and its clarification of the ADEA standard.

*Feliciano de la Cruz v. El Conquistador Resort & Country Club.* 218 F.3d 1, 6 (1st Cir. 2000)(internal quotation marks omitted), that "age was the 'but-for' cause of the employer's adverse decision." *Gross*, 129 S. Ct. at 2350. In evaluating whether summary judgment is proper, the Court "must weigh all the circumstantial evidence of discrimination, including the strength of the plaintiff's prima facie case and the employer's proffered reasons for its action, mindful that everything depends on individual facts." *Feliciano*, 218 F.3d at 7 (citation and internal punctuation omitted).

There is "no mechanical formula" for determining whether the plaintiff's evidence of pretext and discriminatory animus suffices to forestall summary judgment. *Thomas v. Eastman Kodak Co.*, 183 F.3d 38, 57 (1st Cir. 1999). At the same time, "[g]ood faith errors in an employer's business judgment are not the stuff of ADEA transgressions." *Freeman v. Package Mach. Co.*, 865 F.2d 1331, 1341 (1st Cir. 1988). In other words, the ADEA "does not stop a company from [taking an adverse employment action against a claimant] for any reason (fair or unfair) or for no reason, so long as the decision . . . does not stem from the person's age." *Id.*

The focus "must be on the perception of the decisionmaker, that is, whether the employer believed its stated reason to be credible." *Velez*, 585 F.3d at 452 (citation omitted). Generally, it is "not enough for a plaintiff merely to impugn the veracity of the employer's justification; he must elucidate specific facts which would enable a jury to find that the reason given is not only a sham, but a sham intended to cover up the employer's real [and unlawful] motive of discrimination." *Id.*

(citation omitted). Yet, if the plaintiff presents evidence that the employer's stated explanation "so lacks rationality that it supports the inference that the real reason" for its actions "was . . . age," the plaintiff will have withstood the employer's demand for summary judgment. *Id.* Similarly, "[a]n employer's different and arguably inconsistent explanations for its challenged employment action can serve as evidence of pretext." *Billings v. Town of Grafton*, 515 F.3d 39, 56 (1st Cir. 2008).

### b. Mr. Duckworth's Evidence

Mr. Duckworth first contends that Mid-State's stated reasons for failing to hire him in 2005 are demonstrably false and lead to the same conclusion about its stated reasons for failing to hire him in 2008. *Pl.'s Opp'n.* at 13-17. Regarding the 2005 position, Mr. Duckworth points to: 1) Mid-State's inconsistent explanations about whether it considered external candidates; 2) Mr. Bourgoin's contradictory affidavits about whether D.L. was the only person to apply for the Gage Control Technician position in 2005; and, 3) Mr. Bourgoin's unsupported claim that in 2005 he spoke to and received negative information from two Mid-State employees, Todd Dow and Jim Haskell, regarding re-hiring Mr. Duckworth—a conversation that Mr. Dow does not recall and Mr. Haskell denies. *Id.*

Mr. Duckworth is particularly critical of Mid-State's change in position regarding whether it had hired from the outside in 2005. *Pl.'s Opp'n* at 14. He notes that Mid-State had not merely taken this legal position, but also Mr. McAllister and Mr. Bourgoin had filed affidavits which had contained what later turned out to be inaccurate information about the 2005 hiring of D.L. *Id.* at 15.

Turning to Mid-State's actions in 2008, Mr. Duckworth claims that Mr. Bourgoin, who was the person at Mid-State who decided not to hire Mr. Duckworth, incorrectly asserted that he arrived at the employment interview of Mr. Duckworth with negative information based on his factitious conversations in 2005 with Mr. Dow and Mr. Haskell and based on his erroneous view that Mr. Duckworth had been a "clock watcher" when he was previously employed at Mid-State. *Id.* at 18. Further, Mr. Duckworth disputes Mr. Bourgoin's recollection of the 2008 job interview. Mid-State has said that it was Mr. Duckworth's interview deficiencies that caused it not to hire him in 2008. *Def.'s Mot.* at 7. Mr. Duckworth has claimed that Mr. Bourgoin misrepresented "the questions, answers, and order of the interview." *Pl.'s Opp'n.* at 19. In particular, Mr. Duckworth denies Mr. Bourgoin's assertion that when learning about the job requirements, he told Mr. Bourgoin that the position was more than one man could do and that he voiced his concerns about whether he would be able to do the job. *Id.* at 20. Mr. Duckworth also says that Mid-State's admission that it based its decision not on objective standards but on subjective factors supports his contention that it discriminated against him. *Id.* at 20-21.

Mr. Duckworth then focuses on whether Mid-State's actions were in fact related to his age. During the interview, Mr. Duckworth says that Mr. Bourgoin told him that he wanted someone who would be in Gage Control for a long time. *Id.* at 22. Mr. Duckworth, who was then 60 years old, contends this statement is evidence of ageism, particularly since he says Mr. Bourgoin did not mention this

concern to a 34 year old man who had applied and who had a history of moving from job to job and industry to industry. *Id.* at 22-23.

Finally, Mr. Duckworth points to Mid-State's differing, inconsistent and unsupported reasons for its actions. He claims that Mid-State's Human Resources Manager Peter McAllister made demonstrably false claims before the Maine Human Rights Commission about what Todd Dow, Mr. Duckworth's past supervisor, had said about Mr. Duckworth's past performance. *Id.* at 27. Mr. Duckworth says not only did Mr. Dow not criticize his past performance, but Mid-State's own records confirm that he had been a good worker. *Id.* at 27-28. He also disputes Mid-State's claim that M.B., the person whom Mid-State hired in 2008, was better qualified. Mr. Duckworth says that M.B. had never worked in a machine shop and was not familiar with the decimal inch system Mid-State used in its machine shop; whereas, Mr. Duckworth, who had previously worked there for six years, was better qualified for the position. *Id.* at 28-29.

### c.    Mid-State's Reply

Mid-State vigorously disputes much, if not all, of Mr. Duckworth's version of the hiring process in 2005 and 2008. However, it does concede that its original position that Mid-State did not consider outside candidates in 2005 was in error and it had corrected an "honest mistake." *Def.'s Reply* at 2. The problem for Mid-State on this and other issues is that at this point in the process, the Court must draw "all reasonable inference from the facts in the nonmoving party's favor." *St. Paul Fire & Marine Ins. Co. v. VDE Corp.*, 603 F.3d 119, 122 (1st Cir. 2010). Thus, for example,

it is up to a jury to determine whether, as Mid-State contends, that the contradictions between the affidavits of Peter McAllister and Leo Bourgoin were in fact honest mistakes.[10]

Similarly, although Mid-State may ultimately be able to convince the jury that its version of why it did not hire Mr. Duckworth in 2008 is correct and must prevail, the record generates genuine issues of material fact to deny Mid-State's demand for summary disposition. Mr. Duckworth has presented evidence from which a jury could find: 1) that Mid-State shifted its rationale for its 2005 decision, *Billings*, 515 F.3d at 56 (stating that "different and arguably inconsistent explanations for its challenged employment action can serve as evidence of pretext"); 2) that Mid-State's policy about whether and when it accepted outside applicants is ambiguous, *Velez*, 585 F.3d at 450 (stating that an employer's "shifting explanations and ambiguous company policy support the conclusion that its explanations . . were pretextual"); 3) that Mr. Bourgoin's recollection of the information he received from Mid-State employees about Mr. Duckworth's prior performance at Mid-State is false, *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000) (stating that "it is *permissible* for the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer's explanation"); 4) that Mr. Duckworth had superior technical qualifications over the persons Mid-State hired both in 2005 and 2008, *Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 457

___

[10] Mid-State earnestly contends that its voluntary revelation of the true facts compels the conclusion that its original filings were simply an honest mistake, but Mr. Duckworth sharply replies that the true state of affairs only came to light after the Court ordered the disclosure of Mid-State documents that laid bare the inaccuracy of the affidavits. The Court is not in a position to evaluate this question.

(2006) (Title VII case) (stating that "[u]nder this Court's decisions, qualifications evidence may suffice, at least in some circumstances, to show pretext"); 5) that Mid-State eschewed technical qualifications and resorted to subjective standards to deny Mr. Duckworth employment, *Robinson v. Polaroid Corp.*, 732 F.2d 1010, 1015 (1st Cir. 1984) (discussing the role of "excessive subjectivity" in the hiring process); and, 6) that Mr. Bourgoin's statement to Mr. Duckworth (and not to the younger successful candidate) that he wanted an employee who would be in the position for a "long time" was directed toward Mr. Duckworth's age of 60, *Walton v. Nalco Chemical Co.*, 272 F.3d 13, 24 (1st Cir. 2001) (stating that "discriminatory remarks . made by persons in a position to influence the challenged employment action may suffice to establish pretext").

Each of these factors, standing alone, might not be sufficient to overcome the absence of any direct evidence that Mid-State discriminated against Mr. Duckworth due to his age. However, their cumulative impact creates sufficient factual questions about Mid-State's true motivation in denying Mr. Duckworth employment in 2005 and 2008 to allow the case to go to a jury for resolution. *Gross*, 129 S. Ct. at 2351 (stating that a "plaintiff must prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the 'but-for' cause of the challenged employer decision").

## III.    CONCLUSION

The Court DENIES Mid-State Machine Products' Amended Motion for Partial Summary Judgment (Docket # 23) and its Motion for Summary Judgment (Docket # 40).[11]

SO ORDERED.


/s/ John A Woodcock, Jr.
JOHN A. WOODCOCK, JR.
CHIEF UNITED STATES DISTRICT JUDGE

Dated this 3rd day of September, 2010

---

[11] The Court also DENIES Mid-State Machine Products' multiple motions to strike in Defendant's Reply to Plaintiff's Additional Statement of Material Facts (Docket # 60).